UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JULEE FRAZIER,                                          :

                Plaintiff,              :              16 Civ. 4320 (AJP)

         -against-              :              **OPINION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,      :

               Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANDREW J. PECK, United States Magistrate Judge:**

         Plaintiff Julee Frazier, proceeding through counsel, brings this action pursuant to

§ 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the

Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI"). (Dkt. No. 2: Compl.) Presently before the Court are

the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No.

12: Comm'r Notice of Mot.; Dkt. No. 20: Frazier Notice of Mot.) The parties have consented to

decision of the case by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No.

9.)

         For the reasons set forth below, the Commissioner's motion for judgment on the

pleadings (Dkt. No. 12) is <u>GRANTED</u> and Frazier's motion (Dkt. No. 20) is <u>DENIED</u>.

## **FACTS**

### **Procedural Background**

         Frazier filed for DIB and SSI on April 3, 2013, alleging a disability onset date of July

1, 2012. (Dkt. No. 10: Administrative Record ("R.") 125-38.) The Social Security Administration

("SSA") denied Frazier's application on May 24, 2013. (R. 70-76.) Frazier requested a hearing before an Administrative Law Judge ("ALJ") on July 26, 2013. (R. 78-82.) On October 23, 2014, represented by counsel, Frazier had a hearing before ALJ Michael Friedman. (R. 32-51, 90-94.) On January 14, 2015, ALJ Friedman issued a written decision finding Frazier not disabled within the meaning of the Social Security Act. (R. 7-20.) ALJ Friedman's decision became the Commissioner's final decision when the Appeals Council denied review on April 6, 2016. (R. 1-4.)

**Non-Medical Evidence and Testimony**

Born on October 24, 1954, Frazier was fifty-seven years old at the alleged July 1, 2012 onset of her disability. (R. 54, 126.) She completed high school, two years of college and specialized job training in phlebotomy. (R. 152.) Frazier most recently worked as a grounds keeper for the Parks Department (R. 35-36, 45, 152) on a seasonal basis (R. 35) until April 19, 2011 (R. 60, 68, 151-52, 169). She testified that she attempted to work again starting in February 2014, but she was terminated in May 2014 because of her dizziness. (R. 35, 44.)

On April 9, 2013, Frazier completed a questionnaire on dizziness in connection with her application for benefits. (R. 191-92.) Frazier reported episodes of dizziness, which manifested as light-headedness and staggering, occurring two to three times per day and lasting less than five minutes. (R. 191.) She took meclizine[1] to relieve her symptoms. (Id.) She was never treated in an emergency room due to her dizziness. (Id.)

On April 17, 2013, Frazier completed a Function Report. (R. 158-66.) When asked how her illnesses affect her activities of daily living, she reported that if she moves too fast, "vertigo

---

[1]     Meclizine is "an antihistamine used in the management of . . . vertigo associated with disease affecting the vestibular system." Dorland's Illustrated Medical Dictionary at 1117 (32d ed. 2012).

makes [her] go slower because of spinning." (R. 158.) Vertigo also diminished her ability to look backward, lean forward, squat, stand, sleep, dress herself and cook. (R. 159-60, 162.) She reported back problems that caused an aching and burning pain (R. 164) and prevented her from lifting anything heavy, standing or sitting for "to[o] long" and walking "to[o] far" (R. 162). She stated that she used to wear a back brace, and took or takes methocarbamol, naproxen and ibuprofen for pain. (R. 165.) Her pain would subside twenty to thirty minutes after taking medication. (Id.) Stress caused her blood pressure to rise resulting in "pounding" headaches. (R. 164.) She experienced shortness of breath when dressing (R. 159) and climbing stairs (R. 162). She had to rest after cooking (R. 160) or walking four to five blocks (R. 163).

Frazier also reported caring and cooking for her autistic grandson (R. 158); preparing food on a daily basis and cooking "full course meals" (R. 160); doing the laundry, cleaning and "some household repairs" (id.); going outside alone three to four times a week (id.); walking and driving her car (R. 160-61); shopping for food, clothes, shoes, furniture and housewares for up to two hours at a time (R. 161); reading and doing Sudoku puzzles on a daily basis (id.); and attending tenants' committee meetings monthly and church and social group meetings weekly (R. 161-62). She could pay her bills, count change and handle a savings account. (R. 161.) She had no problems with reaching, using her hands, hearing and talking. (R. 162.) She had no problems paying attention and following written or spoken instructions, and she could finish what she started. (R. 163.) She got along with people in authority and had never lost a job "because of problems getting along with people." (Id.)

At her October 23, 2014 hearing, Frazier testified that she suffered from Meniere's

disease[2] resulting in vertigo.  (R. 36.)  Her vertigo would cause dizziness on a daily basis that would last "[s]ometimes ten minutes or less."  (R. 43.)  She stated that she was terminated from her job with the Parks Department in May 2014 because she went home after getting dizzy and falling "out on the platform" while taking the train to work.  (R. 44.)  Frazier stated that she had a heart murmur and asthma (R. 36); she was treating her asthma with an inhaler (R. 37).  Frazier also reported pain in her back, chest and legs.  (R. 37-38.)  She claimed that her back pain was caused by "two herniated slipped discs" at "L4 and L5," and that she was treating her back pain with physical therapy and medication.  (R. 38.)

Frazier testified that she started weekly treatment with psychiatrist Dr. Anna Fagan one or two months before her hearing, and that she had been diagnosed with depression and prescribed Prozac.  (R. 38-39.)  Her depression started after she lost her job (R. 38) and manifested in frequent crying (R. 39).  She reported difficulty concentrating, remembering things, and a lack of interest in being around people.  (R. 40-41.)  She enjoyed reading, but stated that she could not focus on or understand what she was reading.  (R. 42.)  She could follow along while watching television, but would often "blank out."  (R. 42-43.)

Frazier stated that she could stand for about five minutes, sit for ten or fifteen minutes, and walk two or three city blocks before needing to rest.  (R. 41.)  She could carry a five-pound grocery bag.  (Id.)  Frazier testified that she cooked, cleaned and shopped with help from her daughter.  (R. 41-42.)  Because of her back pain, she needed to take breaks while cooking and cleaning.  (R. 43.)

---

[2]    Meniere's disease is "hearing loss, tinnitus, and vertigo resulting from nonsupperative disease of the labyrinth with edema."  Dorland's Illustrated Medical Dictionary at 539.

**Medical Evidence Before the ALJ**

**Mount Sinai Outpatient Clinic**

On December 14, 2012, Frazier visited Mount Sinai Clinic complaining of lightheadedness exacerbated by standing quickly, as well as intermittent tinnitus. (R. 204.) She also complained of intermittent vertigo when turning to her right. (Id.) She denied hearing loss, pain, or drainage from her ears. (Id.) Taking meclizine relieved her vertigo symptoms. (Id.) Frazier was examined by physician assistant ("PA") Mei-Kuen Xie (id.), who reported that Frazier was in no acute distress and that her ears and nerve functioning appeared normal apart from right rotary nystagmus[3/] when performing the Dix Hallpike maneuver[4/] (R. 205). PA Xie recommended further auditory and electronystagmography testing and prescribed meclizine. (Id.) Dr. Carl Wiesenthal reviewed and agreed with PA Xie's assessments. (Id.)

On February 6, 2013, Frazier met with audiologist Elena Kagan and underwent tympanometry and comprehensive hearing testing. (R. 203.) The testing revealed normal hearing in both ears. (Id.)

**Institute for Family Health**

On June 11, 2013, Dr. Lindsey Faucette of the Institute for Family Health referred Frazier to Physical Therapy of Harlem for treatment of lower back pain. (R. 227.) Dr. Faucette reported that Frazier had a history of degenerative disc disease but no recent imaging. (Id.) Frazier

---

[3/] Rotary nystagmus is "an involuntary, rapid, rhythmic movement of the eyeball . . . in which the movement is about the visual axis." Dorland's Illustrated Medical Dictionary at 1307-08.

[4/] The Dix-Hallpike maneuver is "a test for benign positional vertigo" in which "the examiner turns the head of the seated patient to one side and pulls the patient backwards into a supine position with the head hanging over the edge of the examining table; the patient then looks straight ahead and the examiner observes for positional nystagmus, which is indicative of benign positional vertigo." Dorland's Illustrated Medical Dictionary at 1102.

complained of intermittent burning pain. (Id.) Her examination results, however, were normal. (Id.) Treatment notes spanning four physical therapy sessions in June and July 2013 indicate decreased pain over time (R. 218, 220), "good" rehabilitation potential (R. 213, 217-18, 220, 222, 226), and pain rated at one on a ten-point scale during the final session (R. 213, 222). Frazier's physical therapist reported her activities of daily living to include housekeeping, laundry, hand and arm use, pulling and pushing objects, and the ability to push a shopping cart for two to three city blocks. (R. 213, 215, 218, 220, 222, 224.) Although Frazier was authorized for six physical therapy sessions (R. 227), she attended only four (see R. 212).

On September 11, 2014, social worker Anna Fagan completed a Mental Health Questionnaire co-signed by Dr. Olanrewaju Adedokun. (R. 233-35.) Frazier's diagnoses are listed on the questionnaire as "major depressive disorder, recurrent episode, moderate; generalized anxiety disorder." (R. 233.) Fagan indicated that Frazier's depressive symptoms included "loss of interest in almost all activities," "[a]ppetite disturbance with weight change," "[s]leep disturbance," "[d]ecreased energy," "[f]eelings of guilt or worthlessness," and "[d]ifficulty concentrating or thinking." (Id.) Frazier's only anxiety symptom was "[a]pprehensive expectation." (Id.) Other symptoms included emotional lability, hostility and irritability, and social withdrawal or isolation. (R. 234.) Fagan placed "X" marks in spaces indicating that these symptoms resulted in no restrictions to Frazier's activities of daily living; moderate difficulties in social functioning; marked difficulties in "[c]oncentration, persistence or pace resulting in failure to complete tasks in a timely manner"; and marked "[e]pisodes of deterioration or decompensation in work or work-like settings." (R. 235.) Fagan stated that these symptoms began in "March 2014 when [Frazier] was terminated from employment," and could be expected to last twelve months or longer. (R. 234.) When prompted to "[d]escribe the clinical findings . . . which demonstrate the severity of [Frazier's] mental

impairment and symptoms," Fagan listed only Frazier's "reports [of] depression and irritability." (Id.)

On September 19, 2014, Dr. Adedokun filled out a Medical Opinion Re: Ability To Do Work-Related Activities (Physical) form. (R. 231-32.) Dr. Adedokun indicated Frazier had no limitations on her ability to lift and carry on an occasional or frequent basis, but that she could only stand, walk and sit for less than two hours in an eight-hour work day. (R. 231.) He further opined that Frazier could sit or stand for only fifteen minutes before needing to change position, and that she needed to walk around for twenty minutes on an hourly basis. (Id.) He stated that Frazier would "sometimes need to lie down at unpredictable intervals during an 8 hour working shift." (Id.) When asked what medical findings supported these limitations, Dr. Adedokun stated, "L4-L5 herniated disc and [Frazier] has Meniere's disease." (Id.) Dr. Adedokun also indicated that the vertigo/balance issues secondary to Meniere's disease would prevent Frazier from crouching and climbing ladders, and would limit her to only occasionally twisting, stooping, and climbing stairs. (R. 232.) He stated that Frazier's ability to reach, handle, finger, feel, push and pull were unaffected be her impairments. (Id.)

**Dr. Iqbal Teli**

On April 23, 2013, Dr. Iqbal Teli conducted a consultative examination of Frazier in connection with her application for disability benefits. (R. 198-201.) Frazier's chief complaint was lower back pain, but she also reported a history of acid reflux disease and heart murmur. (R. 198.)[5] Her daily activities included cooking, cleaning, showering, and dressing. (Id.) On

---

[5] Dr. Teli's report does not list vertigo/Meniere's disease as one of Frazier's complaints or diagnoses; the report lists no symptoms of or limitations relating to vertigo. (See generally R. 198-202.)

examination, Dr. Teli found that Frazier exhibited no acute distress; had a normal gait and normal stance; could walk on her toes without difficulty, but could not walk on her heels; and used no assistive device and needed no help getting on and off the exam table or rising from a chair. (R. 199.) Her blood pressure was 134/82 (R. 198), and her heart exhibited a grade two systolic murmur (R. 199). Frazier's cervical and lumbar spine exhibited full flexion, extension, lateral flexion, and rotary movement bilaterally. (Id.) She reported tenderness in her lower back, but her straight leg raise test was negative bilaterally. (Id.) She exhibited diminished pain sensation in her left hand, but her strength and dexterity were intact. (R. 200.) A lumbosacral spine x-ray taken on April 25, 2013 showed straightening but no disc herniations or bulges. (R. 200, 202.) Dr. Teli opined that Frazier "should avoid dust and other respiratory irritants due to history of asthma. [She] has a mild restriction for prolonged sitting and a mild restriction for lifting and carrying heavy weight." (R. 200.)

**New York Eye and Ear Infirmary**

On June 21, 2013, Frazier was examined by Dr. Zetterstrand and underwent videonystagmographic testing. (R. 197.) Dr. Zetterstrand's diagnostic impressions were listed as "vertigo." (R. 196-97.)

**Third Avenue Pharmacy**

On September 15, 2014, Frazier filled prescriptions for Proair HFA,[6] Losartan,[7]

---

[6] Proair HFA is brand of albuterol aerosol spray. See Drugs.com, https://www.drugs.com/cdi/proair-hfa-aerosol.html (last visited April 21, 2017). Albuterol is "administered by inhalation as a bronchodilator for . . . the treatment of asthma-associated bronchospasm." Dorland's Illustrated Medical Dictionary at 45.

[7] Losartan is a medication "used as an antihypertensive." Dorland's Illustrated Medical Dictionary at 1075.

Amlodipine[8/] and Luticasone.[9/]  (R. 238.)  Four days later, she filled a prescription for ibuprofen.

(Id.)  On October 19, 2014, Frazier filled prescriptions for Fluoxetine,[10/] Meclizine, Fluticasone,

Amlodipine, Losartan and Proair HFA.  (R. 238-39.)  On November 14, 2014, Frazier filled

prescriptions for Meclizine, Fluticasone, Amlodipine and Losartan.  (R. 239.)  On December 1,

2014, Frazier filled a prescription for Proair HFA.  (Id.)  On December 10, 2014, Frazier filled

prescriptions for Meclizine, Losartan and Amlodipine.  (Id.)  On January 5, 2015, Frazier filled

prescriptions for Meclizine, Amlodipine, Losartan.  (R. 230-40.)[11/]

**Vocational Expert Testimony**

Vocational expert Gerald Belchick testified at Frazier's hearing.  (R. 45-50.)

Belchick testified that Frazier's prior work as a groundskeeper qualified as medium work.  (R. 45-

46.)  ALJ Friedman asked Belchick whether jobs existed that Frazier could perform, assuming she

could perform medium work but could not perform jobs "involving heights, exposed, moving

machinery, or driving" or those "involving excessive pulmonary irritants," and that she could only

---

[8/]     Amlodipine is "a calcium channel blocking agent used in the treatment of hypertension."
Dorland's Illustrated Medical Dictionary at 63.

[9/]     Fluticasone is "a synthetic corticosteroid used topically as an antiinflammatory and
antipruritic . . . by inhalation in maintenance treatment of asthma."  Dorland's Illustrated
Medical Dictionary at 722.

[10/]    Fluoxetine is "a selective serotonin uptake inhibitor . . . used in the treatment of depression."
Dorland's Illustrated Medical Dictionary at 722.  It is the generic form of Prozac.  See
Drugs.com, https://www.drugs.com/fluoxetine.html (last visited April 21, 2017).

[11/]    The record contains documents submitted after ALJ Friedman rendered his decision.
Although new and material evidence may be submitted to the Appeals Council subsequent
to an ALJ decision, such evidence must "relate[] to the period on or before the date of the
administrative law judge hearing decision."  20 C.F.R. § 404.970(c); see also, e.g., Cahill v.
Colvin, 12 Civ. 9445, 2014 WL 7392895 at *31 (S.D.N.Y. Dec. 29, 2014).  The Court
therefore does not address the examination report from the Institute for Family Health dated
January 9, 2016 (R. 241-43) or prescriptions from Third Ave Pharmacy filled on February
1, 2015 and April 9, 2015 (R. 240).

perform "jobs involving simple, routine, repetitive-type tasks, and involving only occasional contact with supervisors, coworkers, and the public." (R. 46.) Belchick opined that with those restrictions, Frazier could not perform her past work as a groundskeeper because of irritants in the air (id.), but that she could perform the duties of a "small assembly" factory worker (R. 46-47), a hand packaging factory worker (R. 47), a kitchen helper (restaurant dishwasher) (id.), and an order filler (R. 48). All of these jobs, according to Belchick, exist in significant numbers in the national economy. (R. 46-48.) On cross examination, Belchick testified that Frazier's sensitivity to pulmonary irritants would limit some kitchen helper jobs, but "would not . . . totally eliminate the jobs." (R. 49.)

## ALJ Friedman's Decision

On January 14, 2015, ALJ Friedman denied Frazier's application for benefits. (R. 7-20.) ALJ Friedman applied the appropriate five step legal analysis. (R. 11-12.) First, he found that Frazier "has not engaged in substantial gainful activity since July 1, 2012, the alleged onset date." (R. 12.) Second, ALJ Friedman found that Frazier had "the following 'severe' impairments: Meniere's disease; vertigo; hypertension; asthma; depressive disorder; lumbago." (Id.) Third, ALJ Friedman found that Frazier did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 13.) ALJ Friedman specifically addressed Frazier's asthma, Meniere's disease, and hypertension, concluding that those impairments did not meet the listings' criteria based on a lack of physician intervention, no audiology reports indicating hearing loss, and no identifiable effects of high blood pressure on her organs. (Id.) ALJ Friedman also concluded that Frazier's mental impairments were not severe based on her activities of daily living, her reported participation in social gatherings, her testimony that she enjoys reading and doing Sudoku puzzles, and her lack of reported episodes of decompensation. (R. 13-14.)

ALJ Friedman determined that Frazier had the residual function capacity ("RFC") to

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) restricted against jobs involving heights, exposed moving machinery or driving or jobs involving excessive pulmonary irritants, and also restricted to jobs involving simple, routine repetitive type tasks and requiring only occasional contact with supervisors, co-workers and the public.

(R. 15.)

ALJ Friedman accorded "significant" weight to Dr. Teli's consultative opinion that Frazier should avoid respiratory irritants and had "[o]nly a mild restriction for prolonged sitting and for lifting and carrying heavy weight." (R. 16-17.) ALJ Friedman found that the lack of imaging evidence and Frazier's conservative course of treatment cut against Dr. Faucette's statement that Frazier's back pain was caused by degenerative disc disease. (R. 17.) With regard to Frazier's mental impairments, ALJ Friedman found that the opinions of Dr. Adedokun and social worker Anna Fagan, who found "marked" impairments in several areas (see page 6 above), conflicted with Frazier's self-completed function report (see pages 2-3 above) and her activities of daily living (R. 18). ALJ Friedman also concluded that Frazier's "statements concerning the intensity, persistence and limiting effects" of her impairments, including back pain, vertigo, and depression, were "not entirely credible." (R. 17.) He supported this determination with a review of the medical evidence of record, as well as Frazier's own testimony regarding her activities of daily living. (R. 17-18.)

At the fourth step, ALJ Friedman determined that Frazier had no past relevant work (R. 19), but that given Frazier's "age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy" that she could perform (R. 19-20). ALJ Friedman noted that Frazier is considered an individual of advanced age, that she has a high school education and is able to communicate in English. (R. 18-19.) He relied on vocational

expert Belchick's testimony that a person with these characteristics and limitations could work as a hand packager, kitchen helper or order filler. (R. 19.) Accordingly, ALJ Friedman concluded that Frazier was not "under a 'disability', as defined in the Social Security Act, from July 1, 2012" through January 14, 2015. (R. 20.)

## ANALYSIS

## I.    THE APPLICABLE LAW

### A.    Definition Of Disability

A person is considered disabled for Social Security benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see, e.g., Barnhart v. Thomas, 540 U.S. 20, 23, 124 S. Ct. 376, 379 (2003); Barnhart v. Walton, 535 U.S. 212, 214, 122 S. Ct. 1265, 1268 (2002); Impala v. Astrue, 477 F. App'x 856, 857 (2d Cir. 2012).[12/]

> An individual shall be determined to be under a disability only if [the combined effects of] his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

---

[12/]    See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Surgeon v. Comm'r of Soc. Sec., 190 F. App'x 37, 39 (2d Cir. 2006); Rodriguez v. Barnhart, 163 F. App'x 15, 16 (2d Cir. 2005); Malone v. Barnhart, 132 F. App'x 940, 941 (2d Cir. 2005); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

> immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see, e.g., Barnhart v. Thomas, 540 U.S. at 23, 124 S. Ct. at 379; Barnhart v. Walton, 535 U.S. at 218, 122 S. Ct. at 1270.[13/]

In determining whether an individual is disabled for disability benefit purposes, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).[14/]

**B.** **Standard Of Review**

A court's review of the Commissioner's final decision is limited to determining whether there is "substantial evidence" in the record as a whole to support such determination. E.g., 42 U.S.C. § 405(g); Giunta v. Comm'r of Soc. Sec., 440 F. App'x 53, 53 (2d Cir. 2011).[15/] "'Thus,

---

[13/] See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x at 111; Betances v. Comm'r of Soc. Sec., 206 F. App'x at 26; Butts v. Barnhart, 388 F.3d at 383; Draegert v. Barnhart, 311 F.3d at 472; Shaw v. Chater, 221 F.3d at 131-32; Rosa v. Callahan, 168 F.3d at 77; Balsamo v. Chater, 142 F.3d at 79.

[14/] See, e.g., Brunson v. Callahan, No. 98-6229, 199 F.3d 1321 (table), 1999 WL 1012761 at *1 (2d Cir. Oct. 14, 1999); Brown v. Apfel, 174 F.3d at 62.

[15/] See also, e.g., Prince v. Astrue, 514 F. App'x 18, 19 (2d Cir. 2013); Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.), cert. denied, 551 U.S. 1132, 127 S. Ct. 2981 (2007); Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Jasinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 61 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam); Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir. 1983).

the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision.'" Morris v. Barnhart, 02 Civ. 0377, 2002 WL 1733804 at *4 (S.D.N.Y. July 26, 2002) (Peck, M.J.).[16/]

The Supreme Court has defined "substantial evidence" as "'more than a mere scintilla [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); accord, e.g., Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 773-74.[17/] "[F]actual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence." Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212, 103 S. Ct. 1207 (1983). The Court must be careful not to "'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'" Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).[18/]

The Court, however, will not defer to the Commissioner's determination if it is "'the product of legal error.'" E.g., Duvergel v. Apfel, 99 Civ. 4614, 2000 WL 328593 at *7 (S.D.N.Y. Mar. 29, 2000) (Peck, M.J.); see also, e.g., Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir.

---

[16/]    See also, e.g., Florencio v. Apfel, 98 Civ. 7248, 1999 WL 1129067 at *5 (S.D.N.Y. Dec. 9, 1999) (Chin, D.J.) ("The Commissioner's decision is to be afforded considerable deference; the reviewing court should not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." (quotations & alterations omitted)).

[17/]    See also, e.g., Halloran v. Barnhart, 362 F.3d at 31; Jasinski v. Barnhart, 341 F.3d at 184; Veino v. Barnhart, 312 F.3d at 586; Shaw v. Chater, 221 F.3d at 131; Brown v. Apfel, 174 F.3d at 61; Perez v. Chater, 77 F.3d at 46.

[18/]    See also, e.g., Campbell v. Astrue, 465 F. App'x 4, 6 (2d Cir. 2012); Veino v. Barnhart, 312 F.3d at 586.

2012); <u>Butts</u> v. <u>Barnhart</u>, 388 F.3d 377, 384 (2d Cir. 2004), <u>amended on other grounds</u>, 416 F.3d 101 (2d Cir. 2005); <u>Tejada</u> v. <u>Apfel</u>, 167 F.3d at 773 (citing cases).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920; <u>see</u>, <u>e.g.</u>, <u>Barnhart</u> v. <u>Thomas</u>, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003); <u>Bowen</u> v. <u>Yuckert</u>, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291 (1987). The Supreme Court has articulated the five steps as follows:

> Acting pursuant to its statutory rulemaking authority, the agency has promulgated regulations establishing a five-step sequential evaluation process to determine disability. If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further. [1] At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [2] At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [3] At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [4] If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. [5] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

<u>Barnhart</u> v. <u>Thomas</u>, 540 U.S. at 24-25, 124 S. Ct. at 379-80 (fns. & citations omitted).[19]

The claimant bears the burden of proof as to the first four steps; if the claimant meets the burden of proving that he cannot return to his past work, thereby establishing a prima facie case, the Commissioner then has the burden of proving the last step, that there is other work the claimant

---

[19] Accord, <u>e.g.</u>, <u>Talavera</u> v. <u>Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012); <u>Rosa</u> v. <u>Callahan</u>, 168 F.3d at 77; <u>Tejada</u> v. <u>Apfel</u>, 167 F.3d at 774; <u>see also</u>, <u>e.g.</u>, <u>Jasinski</u> v. <u>Barnhart</u>, 341 F.3d at 183-84; <u>Shaw</u> v. <u>Chater</u>, 221 F.3d at 132; <u>Brown</u> v. <u>Apfel</u>, 174 F.3d at 62; <u>Balsamo</u> v. <u>Chater</u>, 142 F.3d 75, 79-80 (2d Cir. 1998); <u>Perez</u> v. <u>Chater</u>, 77 F.3d at 46; <u>Dixon</u> v. <u>Shalala</u>, 54 F.3d 1019, 1022 (2d Cir. 1995); <u>Berry</u> v. <u>Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982).

can perform considering not only his medical capacity but also his age, education and training.  See, e.g., Barnhart v. Thomas, 540 U.S. at 25, 124 S. Ct. at 379-80.[20/]

### C. The Treating Physician Rule

The "treating physician's rule" is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion. Specifically, the Commissioner's regulations provide that:

> If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2); see, e.g., Rugless v. Comm'r of Soc. Sec., 548 F. App'x 698, 699-700 (2d Cir. 2013); Meadors v. Astrue, 370 F. App'x 179, 182 (2d Cir. 2010); Colling v. Barnhart, 254 F. App'x 87, 89 (2d Cir. 2007); Lamorey v. Barnhart, 158 F. App'x 361, 362 (2d Cir. 2006).

Further, the regulations specify that when controlling weight is not given a treating physician's opinion (because it is not "well-supported" by other medical evidence), the ALJ must consider the following factors in determining the weight to be given such an opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant.  20 C.F.R. § 404.1527(c)(2)-(6); see, e.g., Cichocki v. Astrue, 534 F. App'x 71, 74 (2d

---

[20/]    See also, e.g., Selian v. Astrue, 708 F.3d at 418; Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Rosa v. Callahan, 168 F.3d at 80; Perez v. Chater, 77 F.3d at 46; Berry v. Schweiker, 675 F.2d at 467.

Cir. 2013); <u>Gunter</u> v. <u>Comm'r of Soc. Sec.</u>, 361 F. App'x 197, 197 (2d Cir. 2010).[21]

When a treating physician provides a favorable report, the claimant "is entitled to an express recognition from the [ALJ or] Appeals Council of the existence of [the treating physician's] favorable . . . report and, if the [ALJ or] Council does not credit the findings of that report, to an explanation of why it does not." <u>Snell</u> v. <u>Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999); <u>see</u>, <u>e.g.</u>, <u>Cichocki</u> v. <u>Astrue</u>, 534 F. App'x at 75; <u>Zabala</u> v. <u>Astrue</u>, 595 F.3d 402, 409 (2d Cir. 2010) (ALJ's failure to consider favorable treating physician evidence ordinarily requires remand pursuant to <u>Snell</u> but does not require remand where the report was "essentially duplicative of evidence considered by the ALJ"); <u>Ferraris</u> v. <u>Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) ("We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary, but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable [reviewing courts] to decide whether the determination is supported by substantial evidence." (citations omitted)); <u>Ramos</u> v. <u>Barnhart</u>, 02 Civ. 3127, 2003 WL 21032012 at *7, *9 (S.D.N.Y. May 6, 2003) (The ALJ's "'failure to mention such [treating physician report] evidence and set forth the reasons for his conclusions with sufficient specificity hinders [this Court's] ability . . . to decide whether his determination is supported by substantial evidence.'").

The Commissioner's "treating physician" regulations were approved by the Second Circuit in <u>Schisler</u> v. <u>Sullivan</u>, 3 F.3d 563, 568 (2d Cir. 1993).[22]

---

[21]    See also, e.g., <u>Foxman</u> v. <u>Barnhart</u>, 157 F. App'x 344, 346-47 (2d Cir. 2005); <u>Halloran</u> v. <u>Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004); <u>Shaw</u> v. <u>Chater</u>, 221 F.3d 126, 134 (2d Cir. 2000); <u>Clark</u> v. <u>Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998); <u>Schaal</u> v. <u>Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998).

[22]    Although not applicable to this case, the Court notes that the regulations governing the "treating physician rule" have recently changed as to claims filed on or after March 27, 2017.
(continued...)

II.     **APPLICATION OF THE FIVE STEP SEQUENCE**

A.     **Frazier Was Not Engaged In Substantial Gainful Activity**

The first inquiry is whether Frazier was engaged in substantial gainful activity after her application for DIB and SSI. "Substantial gainful activity" is defined as work that involves "doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510. ALJ Friedman's conclusion that Frazier did not engage in substantial gainful activity during the applicable time period (see page 10 above) is not disputed. (See generally Dkt. No. 13: Comm'r Br.) The Court therefore proceeds with the analysis.

B.     **Frazier Demonstrated "Severe" Impairments That Significantly Limited Her Ability To Do Basic Work Activities**

The second step of the analysis is to determine whether Frazier proved that she had a severe impairment or combination of impairments that "significantly limit[ed her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). "Basic work activities" include:

> walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations . . . [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b)(1)-(6).

ALJ Friedman determined that Frazier's severe impairments were Meniere's disease, vertigo, hypertension, asthma, depressive disorder and lumbago. (See page 10 above.) ALJ

---

[22/]     (...continued)
See 20 C.F.R. §§ 404.1527, 404.1520c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819 at *5844, *5867-68 (Jan. 18, 2017).

Friedman's findings regarding the step-two severity of these impairments benefit Frazier, and Frazier does not contest those findings. (See generally Dkt. No. 21: Frazier Br.) Accordingly, the Court proceeds to the third step of the five-part analysis.

### C. Frazier Did Not Have A Disability Listed In Appendix 1 Of The Regulations

The third step of the five-step test requires a determination of whether Frazier had an impairment listed in Appendix 1 of the Regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. "These are impairments acknowledged by the [Commissioner] to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995).

ALJ Friedman found that notwithstanding Frazier's severe impairments, she did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (See page 10 above.) ALJ Friedman compared the medical evidence in the record to the criteria in listings 3.03 (asthma), 2.07 (disturbance of the labyrinthine-vestibular function), 4.00H1 (hypertension), and 12.00 (adult mental disorders); he found that Frazier did not meet the necessary criteria for any of these listings. (See page 10 above.) Because ALJ Friedman's finding that Frazier's impairments do not meet or medically equal the listed conditions is not disputed by the parties (see generally Dkt. No. 13: Comm'r Br.; Dkt. No. 21: Frazier Br.), the Court proceeds with the five-step analysis.

### D. Credibility And Residual Functional Capacity Determinations

Before proceeding to step four, the Court will address ALJ Friedman's credibility and residual functional capacity ("RFC") determinations.

### 1.    Credibility Determination

Because subjective symptoms only lessen a claimant's RFC where the symptoms "'can reasonably be accepted as consistent with the objective medical evidence and other evidence,' the ALJ is not required to accept allegations regarding the extent of symptoms that are inconsistent with the claimant's statements or similar evidence."  Moulding v. Astrue, 08 Civ. 9824, 2009 WL 3241397 at *7 (S.D.N.Y. Oct. 8, 2009) (citation & emphasis omitted); see, e.g., Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012) ("As for the ALJ's credibility determination, while an ALJ 'is required to take the claimant's reports of pain and other limitations into account,' he or she is 'not require[d] to accept the claimant's subjective complaints without question.'  Rather, the ALJ 'may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'" (citations omitted)); Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." (citations omitted)); Brown v. Comm'r of Soc. Sec., 310 F. App'x 450, 451 (2d Cir. 2009) ("'Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.'").[23/]  In addition, "courts must show special deference to an

---

[23/]    Accord, e.g., Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008) (same); Thompson v. Barnhart, 75 F. App'x 842, 845 (2d Cir. 2003) (ALJ properly found that plaintiff's "description of her symptoms was at odds with her treatment history, her medication regime, and her daily routine"); Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999); Norman v. Astrue, 912 F. Supp. 2d 33, 85 (S.D.N.Y. 2012) ("It is 'within the discretion of the [Commissioner] to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology.'"); Astolos v. Astrue, No. 06-CV-678, 2009 WL 3333234 at *12 (W.D.N.Y. Oct. 14, 2009) (ALJ properly determined that plaintiff's subjective pain
(continued...)

ALJ's credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while [the plaintiff was] testifying."  Marquez v. Colvin, 12 Civ. 6819, 2013 WL 5568718 at *7 (S.D.N.Y. Oct. 9, 2013).[24/]

ALJ Friedman determined that Frazier's "medically determinable impairments could reasonably be expected to cause" her alleged symptoms (R. 17), but that her "statements concerning the intensity, persistence and limiting effects" of those symptoms were "not entirely credible."  (See page 11 above.)

When an ALJ determines that a claimant's own statements regarding her symptoms are not supported by the record, that "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p, 2016 WL 1119029 at *9 (Mar. 16, 2016).  The regulations

---

[23/]    (...continued)
complaints were not supported by the medical record); Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004 at *11 (E.D.N.Y. Mar. 26, 2008) ("The ALJ 'does not have to accept plaintiff's subjective testimony about her symptoms without question' and should determine a plaintiff's credibility 'in light of all the evidence.'"); Soto v. Barnhart, 01 Civ. 7905, 2002 WL 31729500 at *6 (S.D.N.Y. Dec. 4, 2002) ("The ALJ has the capacity and the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of pain alleged by the claimant."); Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (same).

[24/]    Accord, e.g., Campbell v. Astrue, 465 F. App'x 7 ("[W]e have long held that '[i]t is the function of the [Commissioner], not ourselves, . . . to appraise the credibility of witnesses, including the claimant.'"); Nunez v. Astrue, 11 Civ. 8711, 2013 WL 3753421 at *7 (S.D.N.Y. July 17, 2013); Guzman v. Astrue, 09 Civ. 3928, 2011 WL 666194 at *7 (S.D.N.Y. Feb. 4, 2011); Ruiz v. Barnhart, 03 Civ. 10128, 2006 WL 1273832 at *7 (S.D.N.Y. May 10, 2006); Gernavage v. Shalala, 882 F. Supp. 1413, 1419 & n.6 (S.D.N.Y. 1995); Mejias v. Soc. Sec. Admin., 445 F. Supp. 741, 744 (S.D.N.Y. 1978) (Weinfeld, D.J.); Wrennick v. Sec'y of Health, Educ. & Welfare, 441 F. Supp. 482, 485 (S.D.N.Y. 1977) (Weinfeld D.J.).

set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairment(s), his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

Genier v. Astrue, 606 F.3d at 49 (quotations, citation & brackets omitted) (citing 20 C.F.R. §§ 404.1529(a), 404.1529(b), and the now-superseded SSR 96-7p); see also SSR 16-3p, 2016 WL 1119029 at *2; Burgess v. Colvin, 15 Civ. 9585, 2016 WL 7339925 at *11 (S.D.N.Y. Dec. 19, 2016) (quoting SSR 16-3p for an explanation of the two-step process for assessing claimants' statements about their symptoms).

In March 2016, the SSA released SSR 16-3p, which provides updated guidance on evaluating a claimant's claims about the work-preclusive nature of her symptoms. See generally SSR 16-3p, 2016 WL 1119029; accord, e.g., Duran v. Colvin, 14 Civ. 8677, 2016 WL 5369481 at *13 n.27 (S.D.N.Y. Sept. 26, 2016) ("SSR 16-3p supersedes SSR 96-7p, 1996 WL 374186 (July 2, 1996), and clarifies the policies set forth in the previous SSR.").

> The purpose of [SSR 16-3p] is to provide "guidance about how [to] evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." S.S.R. 16-3P, 2016 WL 1119029, at *1. The Ruling supersedes . . . S.S.R. 96-7p, which placed a stronger emphasis on the role of the adjudicator to make a "finding about the credibility of the individual's statements about the symptom(s) and its functional effects." S.S.R. 96-7P, 1996 WL 374186, at *1. In contrast, S.S.R. 16-3p espouses a more holistic analysis of the claimant's symptoms, and "eliminate[s] the use of the term 'credibility'" from sub-regulation policy. S.S.R. 16-3P, 2016 WL 1119029, at *1. The Commissioner notes that the "regulations do not use this term," and by abandoning it, "clarif[ies] that subjective symptom evaluation is not an examination of an individual's character." Id.

Acosta v. Colvin, 15 Civ. 4051, 2016 WL 6952338 at *18 (S.D.N.Y. Nov. 28, 2016).

ALJ Friedman applied the appropriate two-step process, supporting his determination at the second step with a review of Frazier's testimony regarding her activities of daily living, her conservative courses of treatment, and her physical therapist's treatment notes. (R. 19-20.) Frazier's complaints regarding the severity of her vertigo, for example, were undermined by her statements that she can leave her home independently and retains the ability to drive a car. (R. 17; see also page 3 above.) The Court also notes that Frazier does not appear to have reported her symptoms or diagnosis of vertigo to Dr. Teli during her consultative examination. (See page 7 n.5 above.) Like ALJ Friedman (see R. 16), the Court finds this omission odd: Frazier was diagnosed with vertigo on December 14, 2012 (see page 5 above) and filled out a questionnaire on her vertigo symptoms on April 9, 2013 (see page 2 above)—before her April 23, 2013 consultative examination with Dr. Teli (see page 7 above), the purpose of which was to evaluate the alleged bases (including vertigo) for her application for benefits (see R. 54, 56, 198). See SSR 16-3p, 2016 WL 1119029 at *8 ("In determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work-related activities . . . we will consider the consistency of the individual's own statements.").

Similarly, Frazier's assertions that she could only stand for about five minutes and sit for ten to fifteen minutes due to back pain were not supported by medical opinions based on diagnostic imaging and were contradicted by her conservative courses of treatment—i.e., physical therapy and pain medication. (R. 17; see also pages 3, 5-6 above.) And although she was approved for six physical therapy sessions, she attended only four. See page 6 above; see also SSR 16-3p, 2016 WL 1119029 at *8 ("[I]f the [claimant] fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of [the claimant's] symptoms

are inconsistent with the overall evidence of record."). ALJ Friedman noted, moreover, that during Frazier's physical therapy treatments, "she reported that her pain level is only 1/10" (R. 17 (emphasis omitted)); Frazier also reported that her symptoms improved over time (see page 6 above).

Finally, although Frazier testified that her depression caused difficulty concentrating, such testimony was contradicted by her statements in her function report that she had no problems paying attention, following simple instructions, finishing tasks, and that she read and did Sudoku puzzles daily. (See page 3 above.)

Thus, ALJ Friedman properly found that objective medical evidence and Frazier's own statements failed to support her claims regarding the intensity of her symptoms. See, e.g., Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) (the court will not "second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling"); Rutkowski v. Astrue, 368 F. App'x 226, 230 (2d Cir. 2010) (ALJ adequately supported credibility finding when he noted that "substantial evidence existed showing that [plaintiff] was relatively 'mobile and functional,' and that [plaintiff's] allegations of disability contradicted the broader evidence"); Duran v. Colvin, 14 Civ. 4681, 2015 WL 4476165 at *13 (S.D.N.Y. July 22, 2015) (Peck, M.J.) (the ALJ "met his burden in finding [plaintiff] not entirely credible because the objective medical evidence and her stated independence in activities of daily living failed to support her claims of disability"); Kessler v. Colvin, 48 F. Supp. 3d 578, 596 (S.D.N.Y. 2014) (claimant's "subjective complaints of pain lacked the necessary objective medical support, and therefore were not entitled to any special weight. Accordingly, the ALJ's adverse credibility determination was not erroneous."); Givens v. Colvin, 13 Civ. 4763, 2014 WL 1394965 at *10-11 (S.D.N.Y. Apr. 11, 2014) (Peck, M.J.) (ALJ properly found claimant's disability claims not entirely credible where claimant "admitted that he was capable of performing many day-to-day activities, such as reading,

watching television, caring for his personal needs, using public transportation, and going to church"); Hilliard v. Colvin, 13 Civ. 1942, 2013 WL 5863546 at *15 (S.D.N.Y. Oct. 31, 2013) (Peck, M.J.) (the ALJ "met his burden in finding [plaintiff's] claims not entirely credible because she remains functional in terms of activities of daily living and the objective medical evidence fails to support her claims of total disability based on pain" (citations omitted)); Ashby v. Astrue, 11 Civ. 2010, 2012 WL 2477595 at *15 (S.D.N.Y. Mar. 27, 2012) ("[I]n making his credibility assessment, the ALJ appropriately considered Plaintiff's ability to engage in certain daily activities as one factor, among others suggested by the regulations."), R. & R. adopted, 2012 WL 2367034 (S.D.N.Y. June 20, 2012).

## 2.   Residual Functional Capacity Determination

ALJ Friedman found that Frazier had the RFC to "perform medium work as defined in 20 CFR 404.1567(c)," except that she is

> restricted against jobs involving heights, exposed moving machinery or driving or jobs involving excessive pulmonary irritants, and also restricted to jobs involving simple, routine repetitive type tasks and requiring only occasional contact with supervisors, co-workers and the public.

(See page 11 above.)   Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

ALJ Friedman's RFC determination was based on his review of Frazier's testimony and the medical evidence.  (R. 15-18.)   ALJ Friedman noted, for example, that videonystagmographic testing conducted on June 21, 2013 resulted in a diagnosis of vertigo (see page 8 above), and Frazier presented with complaints of vertigo on December 14, 2012 (see page 5 above).  However, Frazier's February 6, 2013 hearing exam results were normal (see page 5 above), she reported on December 14, 2012 that medication relieved her vertigo symptoms (see page

5 above), and she did not report any symptoms or her diagnosis of vertigo during her consultative examination with Dr. Teli on April 23, 2013 (see page 7 n.5 above). ALJ Friedman also noted that despite Frazier's complaints of disabling episodes of dizziness, she maintained the ability to perform numerous activities of daily living, including driving. (See pages 2-4, 3 above.) This constitutes substantial evidence supporting ALJ Friedman's assessment that Frazier maintained the ability to work so long as she was "restricted against jobs involving heights, exposed moving machinery or driving." (See page 1 above.)

With regard to Frazier's back pain, ALJ Friedman noted that Dr. Teli's consultative examination revealed no acute distress, normal gait, that Frazier needed no help getting on and off the exam table or rising from a chair, full range of motion in the lumbar spine and a negative straight leg raise test (R. 16; see pages 7-8 above); Dr. Teli listed only "mild" restrictions to prolonged sitting and lifting/carrying heavy weight (see page 8 above). Dr. Teli's opinion was supported by the April 25, 2013 x-ray of Frazier's lumbosacral spine showing straightening but no problems with her spinal discs. (See page 8 above.) Such evidence cut against Dr. Adedokun's and Dr. Faucette's opinions, both unsupported by diagnostic imaging,[25] that Frazier's back pain markedly limited her ability to sit, stand or walk and was caused by herniated discs or degenerative disc disease. (See pages 5-7 above.) Frazier's physical therapy progress notes, which indicated improvement and low pain ratings, further supported Dr. Teli's conclusion. (See page 6 above.) Combined with Frazier's

---

[25] Indeed, Dr. Faucette's physical therapy referral references "[n]o imaging in several years" and a "[n]ormal exam" (R. 227; see also pages 5-6 above); when prompted to disclose the "medical findings support[ing] the limitations described" in his Medical Opinion form, Dr. Adedokun conclusorily stated: "L4-L5 herniated disc . . . ." (R. 231; see also page 7 above). ALJ Friedman correctly explained that Dr. Adedokun's opinion "does not supply or refer to appropriate medical findings such as MRI or CT scans of the lumbar spine to support the limitations" listed in that opinion. (R. 17.)

testimony regarding her activities of daily living, such evidence supported ALJ Friedman's determination that Frazier retained the ability to perform medium work despite her complaints of back pain. (R. 15.)[26/]

ALJ Friedman noted that at Frazier's consultative examination with Dr. Teli, Frazier "gave a history of asthma since 2011 for which she uses an Albuterol inhaler." (R. 16.) However, Frazier reported that "[h]er last ER visit for asthma was three years ago." (Id.) Nevertheless, ALJ Friedman gave "significant weight" to Dr. Teli's assessment that Frazier should avoid respiratory irritants, and ALJ Friedman's RFC assessment thus included a restriction on "jobs involving excessive pulmonary irritants." (R. 16-17; see page 11 above.) This assessment is supported by substantial evidence.

With regard to Frazier's mental impairments, ALJ Friedman found that the opinions expressed in the September 11, 2014 Mental Health Questionnaire prepared by social worker Anna Fagan and signed by Dr. Adedokun were "against the weight of the evidence." (R. 18.) ALJ Friedman noted, for example, that although Fagan opined that Frazier had "marked" deficiencies in

---

[26/] Frazier asserts that "[n]o source indicated an opinion that Ms. Frazier could lift 50 pounds and lift 25 pounds frequently." (Dkt. No. 21: Frazier Br. at 17-18.) This is incorrect. In his October 23, 2014 assessment, Dr. Adedokun's affirmatively indicated that Frazier had "[n]o limitation" on her abilities to lift and carry on either an occasional or frequent basis. (R. 231; see also page 7 above.) ALJ Friedman was entitled to credit that finding as the only portion of Dr. Adedokun's opinion consistent with other medical evidence in the record—namely, Dr. Teli's opinion (and supporting x-ray) that Frazier had only "a mild restriction for lifting and carrying heavy weight." R. 200; see, e.g., Raymer v. Colvin, No. 14-CV-6009, 2015 WL 5032669 at *5 (W.D.N.Y. Aug. 25, 2015) ("[T]here is no 'absolute bar to crediting only portions of medical source opinions,'" but "an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions."). Frazier's assertion that "no source indicated an opinion that [she] could be on her feet for two-third's or more of an eight hour workday" (Frazier Br. at 18) is at least impliedly contradicted by Dr. Teli's assessment that Frazier had "a mild restriction for prolonged sitting"; he listed no restriction on prolonged standing (R. 200; see also pages 7-8 above).

"[c]oncentration, persistence or pace" and "marked" "[e]pisodes of deterioration or decompensation in work or work-like settings" (R. 235; see also page 6 above), Frazier herself affirmatively denied problems paying attention in her April 17, 2013 function report (see page 3 above) and the record contained no evidence of episodes of decompensation (R. 18). Thus, contrary to Frazier's assertion (see Frazier Br. at 15-16), ALJ Friedman's explanation was sufficient to satisfy the requirement that an ALJ provide a specific rationale for rejecting a treating physician's opinion.[27] See, e.g., Heitz v. Comm'r of Soc. Sec., 15 Civ. 3456, 2016 WL 4384350 at *7 (S.D.N.Y. Aug. 17, 2016).

The Court additionally notes that when the mental health questionnaire prompted Fagan to "[d]escribe the clinical findings . . . which demonstrate the severity of [Frazier's] mental impairment and symptoms," Fagan listed only Frazier's own "reports [of] depression and irritability." (See page 6-7 above.) Fagan's report, moreover, is internally inconsistent insofar as it lists "loss of interest in almost all activities" as a symptom of Frazier's depression, but thereafter indicates that Frazier's depression had no effect on her activities of daily living. (See page 6 above.)[28]

---

[27] In any event, as a social worker, Fagan—who appears to have done the heavy lifting on the Mental Health Questionnaire (see R. 235) and with whom Frazier began weekly treatment in August or September 2014 (see page 4 above)—does not qualify as a treating source entitled to deference under the treating physician rule. See 20 C.F.R. § 404.1527(a)(2); SSR 06-3p, 2006 WL 2329939 at *2 (Aug. 9, 2006); Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) ("According to Social Security Ruling 06-3p, 'only "acceptable medical sources" can be considered treating sources . . . whose medical opinions may be entitled to controlling weight.'"); see also, e.g., Castillo v. Colvin, 13 Civ. 5089, 2015 WL 153412 at *22 (S.D.N.Y. Jan. 12, 2015) ("[A] licensed social worker is not considered an 'acceptable medical source' . . . .").

[28] The Commissioner argues (see Dkt. No. 13: Comm'r Br. at 18) that examinations showing Frazier weighed 196 pounds on December 14, 2012 (R. 204), 190 pounds on April 23, 2013 (R. 198), and 194 pounds on June 16, 2013 (R. 194) undercut Fagan's assessment that Frazier's depression caused "[a]ppetite disturbance with weight change" (see page 6 above). (continued...)

Nevertheless, because Frazier testified at her hearing that she began weekly visits with a therapist in August or September 2014 (R. 39), and because the mental health questionnaire indicated that Frazier suffered from mental impairments—even if the questionnaire's statements regarding the severity of those impairments was against the weight of the evidence—ALJ Friedman found that Frazier retained the RFC to work so long as she was "restricted to jobs involving simple, routine repetitive type tasks and requiring only occasional contact with supervisors, co-workers and the public" (R. 15). This RFC determination was supported by substantial evidence.

The Court finds that ALJ Friedman's RFC determination is supported by substantial evidence in the record.[29/] See, e.g., Sizer v. Colvin, 592 F. App'x 46, 47 (2d Cir. 2015) (RFC determination "based on the medical opinion evidence, the objective medical evidence, and Appellant's testimony at the ALJ hearing" was supported by substantial evidence.); Diaz v. Shalala,

---

[28/] (...continued)
However, these examinations were conducted prior to the alleged March/May 2014 onset of Frazier's depression; the record contains no measurements of Frazier's weight taken in 2014.

[29/] Frazier argues that ALJ Friedman "failed to apply the correct legal standard" because he did not "stat[e] Ms. Frazier's RFC on a function-by-function basis" or provide a "narrative discussion explaining the evidentiary basis for the RFC." (Frazier Br. at 16.) The Second Circuit, however, has rejected a per se rule requiring remand in the absence of an explicit function-by-function analysis: "Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, . . . remand is not necessary merely because an explicit function-by-function analysis was not performed." Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). Moreover, contrary to Frazier's assertion, the one sentence description of ALJ Friedman's RFC determination was followed by more than three pages of narrative discussion supporting that determination. (See R. 15-18; page 11 above.) This discussion provided an adequate basis for meaningful judicial review, and was therefore sufficient to meet ALJ Friedman's obligations under SSR 96-8p. See, e.g., Cichocki v. Astrue, 729 F.3d at 177; Evans v. Comm'r of Soc. Sec., 110 F. Supp. 3d 518, 540-41 (S.D.N.Y. 2015).

59 F.3d 307, 315 (2d Cir. 1995) ("The opinions of three examining physicians, plaintiff's own testimony, and the medical tests together constitute substantial evidence adequately supporting the [Commissioner's] conclusion that plaintiff's injuries did not prevent her from resuming her job as a sewing machine operator."); Fuentes v. Colvin, No. 13-CV-6201, 2015 WL 631969 at *8 (W.D.N.Y. Feb. 13, 2015) ("'The opinion of a consultative examiner can constitute substantial evidence supporting an ALJ's decision.'").

Frazier argues that ALJ Friedman "failed to develop the record by not obtaining Ms. Frazier's medical records from her treatment at Family Health Care at North General and Institute for Family Health, by failing to obtain an updated internal medicine consultative examination, and by failing to obtain a psychiatric consultative examination."  (Frazier Br. at 12.)

It is the "well-established rule in [the Second] circuit" that the ALJ must develop the record:

> "[T]he social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  Social Security disability determinations are "investigatory, or inquisitorial, rather than adversarial."  "[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits."

Moran v. Astrue, 569 F.3d 108, 112-13 (2d Cir. 2009) (citations omitted).  The Second Circuit has clarified, however, that "'where there are no obvious gaps in the administrative record, and where the ALJ already possesses a "complete medical history," the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'"  Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015) (quoting Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999)

(citing <u>Perez</u> v. <u>Chater</u>, 77 F.3d 41, 48 (2d Cir. 1996))).[30/]

Frazier implies that a gap in the record exists because Family Health Care at North General and the Institute for Family Health are listed as treating sources in her Disability Reports, yet there are few treatment notes from these sources in the record. (<u>See</u> Frazier Br. at 13.) Specifically, Frazier observes that her first visit to these sources occurred in 2011 (<u>see</u> R. 155, 180), but there are no treatment notes from 2012; rather, the record contains only the June 11, 2013 referral for physical therapy (<u>see</u> pages 5-6 above) and a "My Visit at Institute for Family Health" note dated July 16, 2013 (R. 194). But Frazier cites no evidence, regulations or cases establishing a presumption that treatment notes must exist under these circumstances. (<u>See generally</u> Frazier Br. at 12-13.) On the contrary, because the record contains the referral and "My Visit" notes, and because neither of those documents evidence a continuing course of treatment, the Court—like ALJ Friedman—has no reason to believe that additional treatment notes must exist from those sources for the relevant period. The ALJ's duty to develop the record is not a duty to go on a fishing expedition. <u>See</u>, <u>e.g.</u>, <u>Schaal</u> v. <u>Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998) ("Plaintiff suggests that the ALJ failed adequately to develop the record concerning the possibility that plaintiff was mentally disabled. However, we find little indication in the record suggesting a disabling mental disorder during the period in question that would have obliged the ALJ to develop the record further.").[31/]

---

[30/]      <u>See also</u>, <u>e.g.</u>, <u>Ramos</u> v. <u>Comm'r of Soc. Sec.</u>, 13 Civ. 6561, 2015 WL 708546 at *18 (S.D.N.Y. Feb. 4, 2015) (ALJ had no further obligation to develop the record where the medical record from the treating clinic was "extensive, including more than two years of consistent treatment notes."); <u>Matos</u> v. <u>Colvin</u>, 13 Civ. 4525, 2014 WL 3746501 at *9 (S.D.N.Y. July 30, 2014) (ALJ properly fulfilled duty to develop the record where he questioned claimant thoroughly, solicited testimony from medical and vocational experts and admitted voluminous submissions from physicians.), <u>aff'd</u>, 618 F. App'x 14 (2d Cir. 2015).

[31/]      <u>Accord</u>, <u>e.g.</u>, <u>Miller</u> v. <u>Colvin</u>, No. 15-CV-0552, 2016 WL 4402035 at *7-8 (N.D.N.Y. Aug.
(continued...)

Frazier argues that "[b]y the time of ALJ Friedman's unfavorable decision on [January] 14, 2015, the internal medicine consultative examination [by Dr. Teli] . . . was 21 months out of date." (Frazier Br. at 13.) But Frazier cites no regulations or cases establishing an expiration date for consultative examinations; nor does she cite any intervening medical evidence in the record calling into question the relevance of Dr. Teli's observations or the opinions drawn therefrom. (See id.) As such, ALJ Friedman was entitled to weigh Dr. Teli's opinion like any other medical opinion evidence. See 20 C.F.R. § 404.1527(c).

Frazier similarly argues that "because by the time of the hearing [she] had been diagnosed with depression and had commenced psychiatric treatment, an impairment that ALJ Friedman identified as severe, [ALJ Friedman] should have also obtained a psychiatric consultative examination." (Frazier Br. at 13-14.) Again, however, Frazier fails to specifically identify any gaps in the record[32/] and cites no regulations or cases establishing an ALJ's obligation to order a consultative examination under these circumstances. (See generally Frazier Br. at 13-14.) The Court therefore concludes that ALJ Friedman was under no such obligation. (See cases cited on page 31 & n.31.)

---

[31/]    (...continued)
18, 2016) ("[A]lthough Plaintiff argues that the ALJ should have sought additional information regarding her diagnosis [of fibromyalgia], she fails to articulate what this evidence consists of and whether it was missing from the record."); Santiago v. Astrue, No. 10-CV-937, 2011 WL 4460206 at *2 (D. Conn. Sept. 27, 2011) ("The plaintiff makes only a general argument that any missing records possibly could be significant, if they even exist. That argument is insufficient to carry his burden.").

[32/]    Indeed, because Frazier was first diagnosed with depression in August or September 2014 (R. 39; see also page 4 above)—shortly before her October 2014 hearing and ALJ Friedman's January 2015 decision (see pages 3, 10 above)—it is unclear what gaps in the record she believes were left by the September 2014 Mental Health Questionnaire (see pages 6-7 above) and her own testimony (see pages 3-4 above).

**E.**     **Frazier Has No Past Relevant Work**

The fourth prong of the five part analysis asks whether Frazier had the residual

functional capacity to perform her past relevant work.  (See page 15 above.)  ALJ Friedman

concluded that Frazier had "no past relevant work."  (R. 18; see also page 11 above.)  This finding

is not disputed, so the Court proceeds to the fifth and final step of the analysis.

**F.**     **There Are Jobs In Substantial Numbers In The Economy That Frazier Can
Perform**

In the fifth step, the burden shifts to the Commissioner, "who must produce evidence

to show the existence of alternative substantial gainful work which exists in the national economy

and which the claimant could perform, considering not only his physical capability, but as well his

age, his education, his experience and his training."  Parker v. Harris, 626 F.2d 225, 231 (2d Cir.

1980).[33]

In meeting his burden under the fifth step, the Commissioner:

> may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404,
> Subpart P, App. 2, commonly referred to as "the Grid".  The Grid takes into account
> the claimant's residual functional capacity in conjunction with the claimant's age,
> education and work experience.  Based on these factors, the Grid indicates whether
> the claimant can engage in any other substantial gainful work which exists in the
> national economy.  Generally the result listed in the Grid is dispositive on the issue
> of disability.

Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996) (fn. omitted); see also, e.g., Heckler v.

Campbell, 461 U.S. 458, 461-62, 465-68, 103 S. Ct. 1952, 1954-55, 1956-58 (1983) (upholding the

promulgation of the Grid); Roma v. Astrue, 468 F. App'x at 20-21; Martin v. Astrue, 337 F. App'x

---

[33]     See, e.g., Roma v. Astrue, 468 F. App'x 16, 20 (2d Cir. 2012); Arruda v. Comm'r of Soc.
Sec., 363 F. App'x 93, 95 (2d Cir. 2010); Butts v. Barnhart, 388 F.3d 377, 381 (2d Cir.
2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Rosa v. Callahan, 168 F.3d
72, 77 (2d Cir. 1999).

87, 90 (2d Cir. 2009); Rosa v. Callahan, 168 F.3d at 78; Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

However, "relying solely on the Grids is inappropriate when nonexertional limitations 'significantly diminish' plaintiff's ability to work so that the Grids do not particularly address plaintiff's limitations." Vargas v. Astrue, 10 Civ. 6306, 2011 WL 2946371 at *13 (S.D.N.Y. July 20, 2011); see also, e.g., Travers v. Astrue, 10 Civ. 8228, 2011 WL 5314402 at *10 (S.D.N.Y. Nov. 2, 2011) (Peck, M.J.), R. & R. adopted, 2013 WL 1955686 (S.D.N.Y. May 13, 2013); Lomax v. Comm'r of Soc. Sec., No. 09-CV-1451, 2011 WL 2359360 at *3 (E.D.N.Y. June 6, 2011) ("Sole reliance on the grids is inappropriate, however, where a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations.'").

Rather, where the claimant's nonexertional limitations "'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d at 605); see also, e.g., Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) ("We have explained that the ALJ cannot rely on the Grids if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert."); Rosa v. Callahan, 168 F.3d at 82 ("Where significant nonexertional impairments are present at the fifth step in the disability analysis, however, 'application of the grids is inappropriate.' Instead, the Commissioner 'must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" (quoting & citing Bapp v. Bowen, 802 F.2d at 603, 605-06)); Suarez v. Comm'r of Soc. Sec., No. 09-CV-338, 2010 WL 3322536 at *9 (E.D.N.Y. Aug. 20, 2010) ("If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ

is required to consult with a vocational expert." (quoting <u>Zabala</u> v. <u>Astrue</u>, 595 F.3d at 411)).

ALJ Friedman properly relied on the testimony of vocational expert Gerald Belchick to determine that jobs Frazier could perform exist. (<u>See</u> pages 11-12 above.)[34/] ALJ Friedman asked Belchick whether jobs existed that Frazier could perform, assuming she could perform medium work but could not perform jobs "involving heights, exposed, moving machinery, . . . driving," or those "involving excessive pulmonary irritants," and that she could only perform "jobs involving simple, routine, repetitive-type tasks, and involving only occasional contact with supervisors, coworkers, and the public." (<u>See</u> pages 9-10 above.) Belchick opined that with those restrictions, Frazier could not perform her past work as a groundskeeper, but that she could perform the duties of a "small assembly" factory worker, a hand packaging factory worker, a kitchen helper, and an order filler. (<u>See</u> page 10 above.) All of these jobs, according to Belchick's testimony, exist in significant numbers in the national economy. (<u>See</u> <u>id.</u>) On cross-examination, Belchick testified that Frazier's sensitivity to pulmonary irritants would limit some kitchen helper jobs, but "would not . . . totally

---

[34/]    A vocational expert can provide evidence regarding the existence of jobs in the economy and a particular claimant's functional ability to perform any of those jobs. 20 C.F.R. §§ 404.1566(e), 416.966(e); <u>see</u>, <u>e.g.</u>, <u>Calabrese</u> v. <u>Astrue</u>, 358 F. App'x 274, 275-76 (2d Cir. 2009); <u>Butts</u> v. <u>Barnhart</u>, 416 F.3d at 103-04; <u>Taylor</u> v. <u>Barnhart</u>, 83 F. App'x 347, 350 (2d Cir. 2003); <u>Jordan</u> v. <u>Barnhart</u>, 29 F. App'x 790, 794 (2d Cir. 2002); <u>Rautio</u> v. <u>Bowen</u>, 862 F.2d 176, 180 (8th Cir. 1988); <u>Dumas</u> v. <u>Schweiker</u>, 712 F. 2d 1545, 1553-54 (2d Cir. 1983); <u>DeJesus</u> v. <u>Astrue</u>, 762 F. Supp. 2d 673, 693 n.20 (S.D.N.Y. 2011) (Peck, M.J.); <u>Quezada</u> v. <u>Barnhart</u>, 06 Civ. 2870, 2007 WL 1723615 at *13 n.20 (S.D.N.Y. June 15, 2007) (Peck, M.J.); <u>Snipe</u> v. <u>Barnhart</u>, 05 Civ. 10472, 2006 WL 2390277 at *18 (S.D.N.Y. Aug. 21, 2006) (Peck, M.J.), <u>R. & R. adopted</u>, 2006 WL 2621093 (S.D.N.Y. Sept. 12, 2006); <u>De Roman</u> v. <u>Barnhart</u>, 03 Civ. 0075, 2003 WL 21511160 at *17 (S.D.N.Y. July 2, 2003) (Peck, M.J.); <u>Bosmond</u> v. <u>Apfel</u>, 97 Civ. 4109, 1998 WL 851508 at *8 (S.D.N.Y. Dec. 8, 1998); <u>Fuller</u> v. <u>Shalala</u>, 898 F. Supp. 212, 218 (S.D.N.Y. 1995) (The "vocational expert, . . . provided several examples of unskilled . . . jobs that are available in the national and local economies for a person with [plaintiff's] condition, age, education, and work experience. . . . Accordingly, the Secretary satisfied her burden of showing that such jobs exist in the national economy.").

eliminate the jobs." (See id.) ALJ Friedman relied upon Belchick's testimony in reaching his step five determination when he specifically referred to those jobs in his findings. (See pages 11-12 above.) Accordingly, ALJ Friedman's decision at step five was supported by substantial evidence.

Frazier argues that "ALJ Friedman failed to apply the correct legal standard by failing to follow the instructions contained in HALLEX - the Hearings, Appeals and Litigation Law Manual - published by the Social Security Administration that governs the administrative adjudicative process - for how the ALJ must proceed in obtaining the opinion of a vocational expert." (Dkt. No. 21: Frazier Br. at 21.) But "HALLEX is 'simply a set of internal guidelines for the SSA, not regulations promulgated by the Commissioner,' and therefore . . . a failure to follow HALLEX does not necessarily constitute legal error." Gallo v. Colvin, 15 Civ. 9302, 2016 WL 7744444 at *12 (S.D.N.Y. Dec. 23, 2016) (quoting Harper v. Comm'r of Soc. Sec., No. 08-CV-3803, 2010 WL 5477758 at *4 (E.D.N.Y. Dec. 30, 2010)), R. & R. adopted, 2017 WL 151635 (S.D.N.Y. Jan. 12, 2017).[35/] Frazier cites no binding authority in support of her arguments and also fails to identify any potential prejudice suffered by virtue of ALJ Friedman's failure to follow the identified HALLEX procedures. (See Frazier Br. at 21-23.)

Finally, Frazier argues that "the testimony of vocational expert, Gerald Belchick, Ph.D., as to numbers of jobs existing in the national economy, was not reliable and, therefore that the ALJ's step five finding is not supported by substantial evidence." (Frazier Br. at 23.) Belchick

---

[35/]   Accord, e.g., Velez v. Colvin, 15 Civ. 0487, 2015 WL 8491485 at *10 (S.D.N.Y. Dec. 9, 2015) ("Even if HALLEX bound the ALJ to a certain course of action—which i[t] does not . . . ."); see also Dority v. Comm'r of Soc. Sec., No. 14-CV-00285, 2015 WL 5919947 at *5 (N.D.N.Y. Oct. 9, 2015) ("The Second Circuit has not yet determined whether or not HALLEX policies are binding; however, other Circuits and district courts within the Second Circuit have found that 'HALLEX policies are not regulations and therefore not deserving of controlling weight.'").

testified that his job number estimates were provided by a private company called SkillTRAN, which derived its numbers from the 10-year Census. (R. 50.) Such testimony provided ALJ Friedman with an adequate basis for relying on Belchick's tesitmony. See, e.g., McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014) ("[A] vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally."); Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 449-50 (2d Cir. 2012) (vocational expert testimony need only constitute "substantial evidence"; declining to apply Daubert analysis or Rule 702 to vocational expert testimony and noting that "Congress has provided, quite clearly, that the Federal Rules of Evidence do not apply in Social Security proceedings"); Galiotti v. Astrue, 266 F. App'x 66, 68 (2d Cir. 2008) (Claimant "argues that the ALJ erred by finding the vocational expert credible because he was unable to specify how he arrived at the number of jobs available in the economy for the positions of security surveillance monitor and information clerk, which he testified that [claimant] could perform despite her impairments. We find this claim unpersuasive. The vocational expert identified the sources he generally consulted to determine such figures. [Claimant] has not pointed to any applicable regulation or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation.").[36]

## CONCLUSION

For the reasons set forth above, the Commissioner's determination that Frazier was

---

[36] See also Gary-Bailey v. Colvin, No. 14-CV-1535, 2016 WL 1323106 at *4 (D. Conn. Jan. 13, 2016) ("[W]hile the Court appreciates Plaintiff's counsel's advocacy for his client, and understands his desire for a more stringent process for testing the reliability of vocational experts in the Social Security disability context, the law in [the Second] Circuit simply does not require the level of inquiry and scrutiny Plaintiff seeks." (fn. omitted)), R. & R. adopted, 2016 WL 1312750 (D. Conn. Apr. 4, 2016).

not disabled within the meaning of the Social Security Act during the period from July 1, 2012 to January 14, 2015 is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is <u>GRANTED</u> and Frazier's motion (Dkt. No. 20) is <u>DENIED</u>. The Clerk of Court shall close the case.

SO ORDERED.

Dated:     New York, New York
           April 21, 2017

**Andrew J. Peck**
United States Magistrate Judge

Copies ECF to:     All Counsel